Okey, C. J.,
dissenting. A railroad company is liable in this state for the negligence of-a conductor, causing injury to a brakeman, upon the ground that the company places the conductor in a position of superiority to the brakeman. But there is no magic in the word conductor; and if the *674 brakeman is bound to obey the orders of the engineer in applying and loosening brakes, as he clearly is, and while obeying such orders is injured by the negligence of the engineer, it is difficult to find satisfactory ground for holding that the company is not equally liable. Argument, however ingenious, based on a distinction between such cases, has for its support no valid reason, and is necessarily fallacious. In my opinion the law of this state is, that, wherever a master has in his employ two or more persons, and the nature of their employment is such that one is required to give orders to the others, who are bound to obey, and while doing so are injured by the negligence of the person placed in such position of superiority, the master is liable; and it is immaterial whether the negligent person be known as conductor, engineer, or by other designation.
In this case the company is clearly liable, in my judgment, by a just application of the principle I have stated. By the very nature of the employment, the brakeman was subordinate to the engineer. But that view is much strengthened by reference to the “ general rules for running trains,” which are made part of the record. In looking into those rules I find they do not support the theory that the conductor alone is superior to the brakeman. On the contrary, the engineer is, under the rules of the company, in many things as much superior to the brakeman, and as much beyond his control or advice, as the conductor, and the brakeman is quite as likely to be injured by the negligence of the former as the latter. The company speaks as emphatically and as potently through the engineer as through the conductor. Take the very ease under consideration. Pataskala was not a regular stopping-place .for this freight train. The conductor gave no signal to stop, but the engineer, in pursuance of a rule of the company, did give the signal for such purpose. The rules provide, inter alia: “ One short blast is a signal for putting down the brakes and stopping the train; two short blasts for relieving the brakes and starting the train. . . . When the signal bell on engine is rung by conductor to stop at next station, the engineer will answer the signal with two short *675 whistles. Engineers will also gi/oe the same signal when it is seen to ie necessary to stop at a station at which he has not ~been signaled to stop iy the conductor.” Engineers “ will be held equally responsible with the conductors in case of any violation of the rules and regulations of the road.”
Here the engineer gave the signals because the company, by fixed rules, commanded him to give them, without waiting for any order of the conductor, and the brakeman obeyed the signals because it was his imperative duty to do so, under the rules of the company. And the same rules which required the engineer to give the signals, made it his duty, when the brakes were loosened, to put on more steam so as to increase the speed. The engineer, in performing this last duty, however, was guilty of gross negligence; he started the train so suddenly as to break it into three sections and maim Ranney for life; and it is fair to say that Ranney would not have been injured if he had not been at the very moment obeying the orders of the company, given through the engineer, to loosen the brakes.
The conductor performed no office whatever at or before reaching Pataskala station—there was none for him to perform. The injury would have happened the same way, to the same ex-' tent, and from the same cause, i. e., the negligence of the company, acting through the engineer, if the conductor had been absent from the train. Shall we segregate the acts of the engineer performed in the few moments which elapsed from the time of giving the signal to apply the brakes until the injury occurred, holding that in giving the signals he was the company’s alter ego, and in putting on more steam a fellow-servant of Ranney—his right hand the company, his left a mere fellow servant ? Surely there is no real foundation for any such distinction.
Railway Co. v. Lewis, 33 Ohio St. 196, was, I think, wrongly decided, and of the same opinion were two of the five judges who heard that case, and the view of the majority in this case is, in my judgment, equally erroneous.
White, J., dissented on the same ground.